## CLARK B. AUGUSTINE, PLAINTIFF, v. JAMES BRITT, DEFENDANT.

*When a deed does not convey the fee of a street, in front of the lot conveyed.*

A deed conveyed certain lots in New York, referring to a map filed in the register's office and giving their numbers thereon, and described them as " beginning at a point formed by the intersection of the westerly side of the Bloomingdale road with the northerly side of Ninety-Sixth street, and running thence * * * thence easterly, along said southerly side of Ninety-seventh street, eighty-seven feet eight and one-quarter inches to the westerly side of Bloomingdale road, and thence southerly, along said westerly side of the Bloomingdale road, two hundred and three feet and six inches, to the point of beginning; together with the right, title, and interest of the said parties of the first part" to the strips laid out on the map as public streets and called Ninety-sixth and Ninety-seventh streets.

*Held*, that the right and title of the parties of the first part to the fee of that portion of the Bloomingdale road lying in front of the premises conveyed, did not pass by the deed, but remained in the grantors and could be subsequently conveyed by them.

CONTROVERSY submitted on agreed facts under section 1279 of the Code of Civil Procedure. The plaintiff sues to compel the specific performance of a contract by the defendant to purchase a parcel of land, which was resisted by the defendant on the ground that the title was defective. The land in question was at one time embraced within the boundaries of the Bloomingdale road, New York ; which road was afterwards abandoned.

*James A. Deering*, for the plaintiff. The description in the deed from Cotte to Sands did not include or convey any part of the road-bed. (*Jackson* v. *Hathaway*, 15 Johns., 449; *Jones* v.

*Cowman*, 2 Sand., 233; *Wetmore* v. *Law*, 34 Barb., 515; *Van Amringe* v. *Barnett*, 8 Bosw., 367; *Anderson* v. *James*, 4 Robt., 35; *Coster* v. *Peters*, 5 Robt., 192; *Sherman* v. *McKeen*, 38 N, Y., 266; *Wallace* v. *Fee*, 50 N. Y., 694; *Fearing* v. *Irwin*, 4 Daly, 385; *English* v. *Brennan*, 60 N. Y., 609; *White's Bank* v. *Nicholls*, 64 N. Y., 65; *Mott* v. *Mott*, 68 N. Y., 246; *Patten* v. *N. Y. E. R. R.*, 3 Abb. [N. C.,] 341.)

*Edward Devoe*, for the defendant. Nothing short of a reservation in express terms will serve to limit the land to the side of a street, if actually bounded upon or touching such street. (*Canal Commissioners* v. *People*, 5 Wend., 423; *Luce* v. *Carley*, 24 W., 452; *Child* v. *Starr*, 4 Hill, 378; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y., 61; *Perrin* v. *N. Y. C. R. R. Co.*, 36 N. Y., 120; *Miner* v. *Mayor*, 5 Jones and Spencer, 200; 8 Cush., 598; 2 Smith's Lead. Cas., 228; *Paul* v. *Carver*, 26 Penn., 224; *White* v. *Godfrey*, 97 Mass., 472; *Woodman* v. *Spencer*, Am. Law Register, Vol. 14 [N. S.], 411.)

INGALLS, P. J.:

The parties hereto have entered into a written agreement, by which the plaintiff has covenanted to convey to the defendant the land in question, and to vest in him a perfect title thereto. The defendant has agreed to accept such conveyance and to pay for the land, but refuses to receive the title which the plaintiff offers, on the ground that it is imperfect and not in accordance with the agreement. As early as the year 1726 the land in question constituted a part of the farm of Teunis Ides. At about that period a public highway, known as the Bloomingdale road, was laid out through such farm, and was used by the public as such until it became abandoned through the agency of the Commissioners of the Central Park, acting under chapter 697 of the Laws of 1867. The land in question was embraced within such public highway, and used by the public up to such abandonment. The public possessed in such land a mere easement, which terminated when the highway was abandoned. The title to the land remained in the original proprietor, subject only to such easement, and is now vested in the party who can trace his title

back to said Teunis Ides. After an examination of the facts, without stopping to note here the links in the chain of title, we are satisfied that James Stricker was, at the time of his death, which occurred in December, 1831, the owner of such farm, including the road in question. By his will he devised the same to his widow for life, and at her decease to his children, naming them. In or about the year 1853, an action of partition was commenced and prosecuted to a decree, under which the land was sold by Hon. Philo T. Ruggles, as referee, a portion of which was purchased by George H. Peck, and the residue by John B. Cotte, and the referee conveyed the land accordingly to the purchasers. In the year 1859 George H. Peck conveyed to said John B. Cotte, who, by virtue of such conveyances, seems to have acquired title to a portion of the farm, including the land in question, subject only to the easement possessed by the public. On the 1st of March, 1860, John B. Cotte and wife conveyed to Richard Sands a portion of such land, which is described as follows : "All those certain eight lots, pieces or parcels of land known on a map filed in the office of the register in the city and county of New York, on the 24th day of June, 1856, and numbered five hundred and eighty, and entitled 'Map of land in the Twelfth ward of the city of New York, commonly known as the Striker's Bay Farm,' sold by an order of the Supreme Court, under the direction of Philo T. Ruggles, referee, surveyed by John J. Serrell, city surveyor, dated New York, December, 1855, by the numbers from two hundred and fifty-one (251) to two hundred and fifty-eight (258), both inclusive, and which said lots, taken together, are bounded and described as follows : Beginning at a point formed by the intersection of the westerly side of the Bloomingdale road with the northerly side of Ninety-sixth street, and running thence westerly along the said northerly side of Ninety-sixth street eighty-six feet and eight inches ; thence northerly, and parallel with the Eleventh avenue, one hundred feet and eleven inches to the centre line of the block ; thence easterly along the centre line of the block twenty-five feet ; thence northerly and parallel with the Eleventh avenue one hundred feet and eleven inches to the southerly side of Ninety-seventh street ; thence easterly along said southerly side of Ninety-seventh street eighty-seven feet eight and

one-quarter inches to the westerly side of Bloomingdale road, and thence southerly along said westerly side of the Bloomingdale road two hundred and three feet and six inches to the point of beginning; together with the right, title, and interest of the said parties of the first part in or to such parts of the strips of land laid out on the said map as public streets, called Ninety-sixth and Ninety-seventh streets, as lies in front of or adjoining the said lots hereby granted and conveyed, and extending to the middle of the said street."

On the 19th day of March, 1878, John B. Cotte and wife conveyed the parcel of land in controversy to William J. Bell, who, on the 25th day of March, 1878, conveyed the same to the plaintiff. If we rightly comprehend this case, it is reduced to one inquiry, whether in legal effect the deed from Cotte and wife to Sands included the land in question? If it did, Cotte parted with the title, and consequently Bell took nothing by the conveyance to him from Cotte, and the plaintiff derived no valid title under his deed from Bell, and can convey none to the defendant. Referring to the description in the deed from Cotte to Sands, we find the following: "Thence easterly along said southerly side of Ninety-seventh street, eighty-seven feet, eight and one-quarter inches to the *westerly side of Bloomingdale road, and thence southerly along said westerly side of the Bloomingdale road two hundred and three feet and six inches to the point of beginning.*" It is contended by the plaintiff that this description does not extend beyond the westerly side of the Bloomingdale road, as it formerly existed. The defendant insists that it extends to the centre of such road, and therefore includes the land in question. Considering the starting point in the description, "beginning at a point formed by the intersection of the *westerly side* of the Bloomingdale road with the northerly side of Ninety-seventh street," in connection with the concluding part of such description given above, we are of the opinion that the effect must be to exclude the land in question, and we think the phraseology employed in the deed from Cotte to Sands shows that such was the intention of the parties. It will be observed that in the same description the parties were particular to provide in regard to Ninety-sixth and Ninety-seventh streets, that the line should extend to the

centre of such streets. We may fairly infer that if such had been the intention in regard to the line in question, a like provision would have been inserted in the description. All the circumstances indicate that the parties intended to restrict the grant by Cotte to Sands to and along the westerly side of the Bloomingdale road, and such, we conclude, is the legal effect which should be given to such conveyance. (*Jackson* v. *Hathaway*, 15 Johns., 449; *Wetmore* v. *Law*, 34 Barb., 515; *Wallace* v. *Fee*, 50 N. Y., 694; *English* v. *Brennan*, 60 id., 609; *White's Bank* v. *Nichols*, 64 id., 65; *Mott* v. *Mott*, 68 id., 246; *Patten* v. *N. Y. Elevated R. R. Co.*, 3 Abbot [N. C.], 341.) It follows that the plaintiff has established title to the land in question, and is capable of conveying to the defendant such title in accordance with the agreement. Judgment must, therefore, be entered in favor of the plaintiff against the defendant.

Daniels and Potter, JJ., concurred.

Judgment ordered in favor of plaintiff against defendant.